**INSTITUTE FOR JUSTICE**
ROBERT E. JOHNSON (DC Bar No. 1013390)*
16781 Chagrin Blvd., Suite 256
Shaker Heights, OH 44120
(703) 682-9320
ELIZABETH L. SANZ (CA Bar No. 340538)
ANDREW WARD (NY BAR NO. 5364393)*
901 N. Glebe Rd., Suite 900
Arlington, VA 22203
(703) 682-9320
JEFFREY ROWES (TX Bar No. 24104956)*
816 Congress Ave., Suite 970
Austin, TX 78701
(512) 480-5936
KATRIN MARQUEZ (FL Bar No. 1024765)*
2 South Biscayne Blvd., Suite 3180
Miami, FL 33131
(305) 721-1600
* Admitted *pro hac vice*

**THE VORA LAW FIRM, P.C.**
Nilay U. Vora (SBN 268339)
Jeffrey Atteberry (SBN 266728)
201 Santa Monica Blvd., Suite 300
Santa Monica, CA 90401
(424) 258-5190

*Attorneys for Plaintiffs Novedades y Servicios, Inc. and Esperanza Gomez Escobar*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF CALIFORNIA**

NOVEDADES Y SERVICIOS, INC., *et al.*,

*Plaintiffs*,

v.

FINANCIAL CRIMES ENFORCEMENT NETWORK, *et al.*,

*Defendants*.

Case No.: 3:25-cv-00886-JLS-DDL

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT**

Special Briefing Schedule Ordered

Judge: Hon. Janis L. Sammartino

# TABLE OF CONTENTS

**Page**

Table of Authorities ........ ii

Background ........ 1

Argument ........ 3

I. The Ninth Circuit's Decision Resolves This Case, And, Even If It Did Not, This Court Has Already Resolved The Relevant Legal Issues Against The Government. ........ 3

II. This Case Is Not Moot, And The Proper Remedies Are A Declaratory Judgment And Vacatur ........ 5

III. The Southwest Border GTO Is Unlawful For All The Reasons Previously Relied Upon By This Court And The Ninth Circuit. ........ 7

A. The Southwest Border GTO Is *Ultra Vires* ........ 7

B. The Southwest Border GTO Required Notice-And-Comment. ........ 12

C. The Southwest Border GTO Is Arbitrary And Capricious. ........ 13

Conclusion ........ 14

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Aguayo v. U.S. Bank*,
653 F.3d 912 (9th Cir. 2011) .......... 10

*Air Line Pilots Ass'n, Int'l v. Quesada*,
276 F.2d 892 (2d Cir. 1960) .......... 8

*Ala. Ass'n of Realtors v. HHS*,
594 U.S. 758 (2021) .......... 11

*Am. Airlines, Inc. v. DOT*,
202 F.3d 788 (5th Cir. 2000) .......... 12

*Biden v. Nebraska*,
600 U.S. 477 (2023) .......... 11

*Biodiversity Legal Found. v. Badgley*,
309 F.3d 1166 (9th Cir. 2002) .......... 6

*Bridgeport Hosp. v. Becerra*,
108 F.4th 882 (D.C. Cir. 2024) .......... 6

*California v. U.S. Bureau of Land Mgmt.*,
277 F. Supp. 3d 1106 (N.D. Cal. 2017) .......... 14

*Cal. Trucking Ass'n v. Bonta*,
723 F. Supp. 3d 920 (S.D. Cal. 2024) .......... 4

*E. Bay Sanctuary Covenant v. Garland*,
994 F.3d 962 (9th Cir. 2021) .......... 13

*FBI v. Fikre*,
601 U.S. 234 (2024) .......... 5

*FCC v. Prometheus Radio Project*,
592 U.S. 414 (2021) .......... 13

*FDA v. R.J. Reynolds Vapor Co.*,
606 U.S. 226 (2025) .......... 8, 9

*Fish v. Schwab*,
957 F.3d 1105 (10th Cir. 2020) .......... 4

*Kim Ho Ma v. Ashcroft*,
257 F.3d 1095 (9th Cir. 2001) .......... 12

*Kiosko Multiservicios LLC v. FinCEN*,
2026 WL 1693761 (D. Ariz. June 11, 2026) .......... 1

*Mexican Gulf Fishing Co. v. U.S. Dep't of Com.*,
60 F.4th 956 (5th Cir. 2023) .......... 14

*Michigan v. EPA*,
576 U.S. 743 (2015) .......... 14

*Mont. Wildlife Fed'n v. Haaland*,
127 F.4th 1 (9th Cir. 2025) .......... 6

*Nat. Res. Def. Council, Inc. v. Evans*,
316 F.3d 904 (9th Cir. 2003) .......... 5

*Protect Our Parks, Inc. v. Buttigieg*,
97 F.4th 1077 (7th Cir. 2024) .......... 4

*Pub. Citizen v. EPA*,
343 F.3d 449 (5th Cir. 2003) .......... 14

*Rest. L. Ctr. v. U.S. Dep't of Lab.*,
120 F.4th 163 (5th Cir. 2024) .......... 6

*Riverbend Farms, Inc. v. Madigan*,
958 F.2d 1479 (9th Cir. 1992) .......... 7

*Rodriguez v. Robbins*,
804 F.3d 1060 (9th Cir. 2015) .......... 4

*Safari Club Int'l v. Zinke*,
878 F.3d 316 (D.C. Cir. 2017) .......... 12

*Sherley v. Sebelius*,
689 F.3d 776 (D.C. Cir. 2012) .......... 4

*Sierra Club v. Bosworth*,
510 F.3d 1016 (9th Cir. 2007) .......... 13

*Skysign Int'l, Inc. v. City & Cnty. of Honolulu*,
276 F.3d 1109 (9th Cir. 2002) .......... 6

*Tex. Ass'n of Money Servs. Bus. v. Bondi*,
783 F. Supp. 3d 963 (W.D. Tex. 2025) .......... 1

*Thalheimer v. City of San Diego*,
2012 WL 177414 (S.D. Cal. Jan. 20, 2012) .......... 4

*Trib. Publ'g Co. v. Comm'r*,
731 F.2d 140 (9th Cir. 1984) .......... 10

*United Steel Workers Int'l Union v. Mine Safety & Health Admin.*,
925 F.3d 1279 (D.C. Cir. 2019) .......... 6

*Valuta Corp., Inc. v. FinCEN*,
2025 WL 2831977 (W.D. Tex. Oct. 6, 2025) .......... 1

*W & T Offshore, Inc. v. Bernhardt*,
946 F.3d 227 (5th Cir. 2019) .......... 13

*Yesler Terrace Cmty. Council v. Cisneros*,
37 F.3d 442 (9th Cir. 1994) .......... 12

**Constitutional Provisions**

U.S. Const. amend. IV .......... 5, 12

**Codes and Statutes**

5 U.S.C. § 551(7) .......... 12

5 U.S.C. § 552(a) .......... 11

5 U.S.C. § 553 .......... 2, 4, 14

5 U.S.C. § 706(2) .......... 2, 7

31 U.S.C. § 5311 .......... 13

31 U.S.C. § 5313(a) .......... 9

31 U.S.C. § 5326 .......... *passim*

## RULES AND REGULATIONS

Sup. Ct. R. 13(1) .......... 2

## FEDERAL REGISTER PUBLICATIONS

FinCEN, *Geographic Targeting Order Imposing Recordkeeping and Reporting Requirements on Certain Money Services Businesses Along the Southwest Border*, 91 Fed. Reg. 56776 (Sept. 4, 2026) .......... 2

FinCEN, *Agency Information Collection Activities; Proposed Renewal; Comment Request; Renewal Without Change of Reports of Transactions in Currency Regulations and FinCEN Form 112-Currency Transaction Report*, 85 Fed. Reg. 29029 (May 14, 2020) .......... 14

FinCEN, *Amendment to the Bank Secrecy Act Regulations Relating to Geographic Reporting of Certain Domestic Currency Transactions,* 54 Fed. Reg. 33675 (Aug. 16, 1989) .......... 8

## OTHER AUTHORITIES

FinCEN, Press Release, *FinCEN Assesses $275,000 Civil Money Penalty against A&S World Trading for Violating Geographic Targeting Order* (Apr. 1, 2022), https://perma.cc/3HLJ-FJQR .......... 7

This is a motion to formally enter summary judgment after the Ninth Circuit all but resolved this case. This Court has already issued a carefully considered opinion resolving the relevant legal issues, and the Ninth Circuit has now entered an equally considered opinion affirming. While those opinions were issued at the preliminary-injunction stage, they control here, and all that is left for the Court to do is to enter final judgment.

**BACKGROUND**

This case concerns Defendant FinCEN's "Southwest Border GTO," a warrantless surveillance regime unlawfully imposed on money services businesses like Plaintiff Novedades y Servicios, Inc. Before the GTO, the law had been that MSBs were required to submit "currency transaction reports" to FinCEN only on cash transactions over $10,000. Then, on March 11, 2025, FinCEN unilaterally announced that the threshold would drop to $200 for MSBs in 30 ZIP codes along the border. Essentially overnight, the government entitled itself to information on 99 percent of the transactions at Novedades without any suspicion of a crime, while at the same time subjecting Novedades to a paperwork burden that was "simply unsustainable." *See generally* ECF 47 at 3–11, 44–47.

Novedades thus brought this suit under the Administrative Procedure Act. The Court responded first by issuing a temporary restraining order, ECF 16, and then by preliminarily enjoining enforcement of the GTO throughout the Southern District of California, ECF 47. The Court held that "Plaintiffs are likely to succeed on the merits of three of their claims under the Administrative Procedure Act—those being the ultra vires claim, the notice-and-comment claim, and the arbitrary and capricious claim." ECF 47 at 2. This holding—that the GTO is likely unlawful—has been shared by every district court to consider the issue. *See Tex. Ass'n of Money Servs. Businesses v. Bondi*, 783 F. Supp. 3d 963 (W.D. Tex. 2025) (*TAMSB*), *appeal docketed*, No. 25-50481 (5th Cir. June 17, 2025); *Valuta Corp., Inc. v. FinCEN*, 2025 WL 2831977 (W.D. Tex. Oct. 6, 2025), *appeal docketed*, No. 25-50776 (5th Cir. Sept. 24, 2025); *Kiosko Multiservicios LLC v. FinCEN*, 2026 WL 1693761 (D. Ariz. June 11, 2026) (considering successor version of GTO).

FinCEN took an interlocutory appeal to the Ninth Circuit, and this Court stayed the case below in the meantime, ECF 65. The appeal proceeded on a normal appellate schedule, with full briefing over several months. By statute, GTOs expire after six months, *see* 31 U.S.C. § 5326(d), so the first version of the Southwest Border GTO expired before the Ninth Circuit heard argument in February 2026. But FinCEN issued two successor GTOs that would have covered Novedades but for the injunction, and FinCEN itself argued that the case was not moot because "the same plaintiffs may well again be subject to a geographic targeting order." *See* FinCEN Reply Br. 25–26, Doc. 38.1, No. 25-4238 (9th Cir. Sept. 24, 2025); Pls.' Rule 28(j) Letter, Doc. 52.1 (9th Cir. Mar. 10, 2026). So the Ninth Circuit proceeded to rule on the merits.

It affirmed in full. Five months after argument, on July 13, 2026, the Ninth Circuit issued a 34-page decision holding that "Plaintiffs are likely to succeed on the merits of their claim[s]":

- "that the Border GTO is a de facto statutory rule and therefore violates [31 U.S.C.] Section 5326, which only authorizes FinCEN to act by 'order'";
- "that the Border GTO was a de facto rule that failed to follow the required notice and comment procedures under 5 U.S.C. § 553"; and
- "that FinCEN issued the Border GTO in an arbitrary and capricious manner" in violation of 5 U.S.C. § 706(2)(A).

9th Cir. Op. 18, 24, 26. FinCEN did not seek a writ of certiorari from the Supreme Court. *See* Sup. Ct. R. 13(1).

After the Ninth Circuit's decision, FinCEN renewed the Southwest Border GTO yet again. *See* 91 Fed. Reg. 56776 (Sept. 4, 2026). This time, however, FinCEN did not include any jurisdiction within the Southern District of California—or, indeed, anywhere else within the Ninth Circuit. *Id.* at 56777. Parallel cases challenging the initial version of the GTO remain pending in the Fifth Circuit, and a case challenging a successor version

remains ongoing in Arizona. *See supra* p. 1.

Here, the parties have now returned from the Ninth Circuit, and both sides "agree that discovery is unnecessary and that the primary remaining steps in the case relate to summary judgment." ECF 69 at 2. On October 8, the Court set a briefing schedule for cross-motions for summary judgment. ECF 72.

**ARGUMENT**

For the sake of preservation and completeness, Plaintiffs repeat merits arguments in the last section of this brief. But the Court need not read that again because the Ninth Circuit's decision is dispositive. With that in mind, this brief proceeds in three parts: Part I explains that the Ninth Circuit's opinion is binding as law of the case and law of the circuit and thus resolves this motion. Part II explains that this case is not moot and that the proper remedies at final judgment are to declare the Southwest Border GTO as issued on March 11, 2025, unlawful, and to vacate it. Finally, Part III recapitulates the merits arguments that have already been resolved at prior stages of this litigation.

**I. The Ninth Circuit's Decision Resolves This Case, And, Even If It Did Not, This Court Has Already Resolved The Relevant Legal Issues Against The Government.**

This Court need not reassess the merits to resolve this motion, as the Ninth Circuit has already resolved the merits in a binding circuit opinion affirming this Court's earlier opinion at the preliminary-injunction stage. Technically, this Court and the Ninth Circuit held that Plaintiffs are "likely" to succeed, not that they *do*. But those rulings still control because they were on purely legal grounds: statutory interpretation, the rule/order distinction, and the sufficiency of a closed administrative record. (Indeed, the *ultra vires* and notice-and-comment sections of the Ninth Circuit's decisions do not mention *any* record.) As the Ninth Circuit has explained:

> The general rule is that our decisions at the preliminary injunction phase do not constitute the law of the case. Because preliminary injunction decisions are often made hastily and on less than a full record, they may provide little guidance as to the appropriate disposition on the merits. However, there is an exception to the general rule for conclusions on pure issues of law.

> The question resolved in [a prior appeal of a preliminary injunction] is a pure question of law. We interpreted the statute … . The decision was not made hastily; it provided a fully considered appellate ruling on the legal issues. We therefore follow [the earlier decision] as law of the case and law of the circuit.

*Rodriguez v. Robbins*, 804 F.3d 1060, 1080–81 (9th Cir. 2015) (cleaned up), *rev'd on other grounds sub nom. Jennings v. Rodriguez*, 583 U.S. 281 (2018).[1] No less is required here. The Ninth Circuit conclusively explained three ways in which the GTO was unlawful, and there is simply nothing in the ruling that would change even if there were fact development remaining. Which the parties agree there isn't. The Court should thus grant summary judgment to Plaintiffs.

Even without the Ninth Circuit's decision, summary judgment would still be appropriate for the same reasons that the Court granted preliminary injunctive relief. "[B]ased on the text, context, structure, and historical record, the Court conclude[d] that the SWB GTO [was] likely to have been issued in excess of FinCEN's statutory authority." ECF 47 at 33. It likewise concluded that "FinCEN likely violated the APA by issuing the SWB GTO without following the notice-and-comment procedures of 5 U.S.C. § 553." *Id.* at 34. And it further held that "the SWB GTO is likely arbitrary and capricious" "[b]ecause the agency failed to undertake the sensitive balancing act of weighing the burden on the private sector against the need for increased security for international remittances." *Id.* at

---

[1] *See also, e.g.*, *Protect Our Parks, Inc. v. Buttigieg*, 97 F.4th 1077, 1091–92 (7th Cir. 2024) (applying law of the case to a ruling made on a preliminary-injunction appeal in an APA case where the court had considered "the identical record," there were "no new facts," and the "legal issues … remained the same"); *Fish v. Schwab*, 957 F.3d 1105, 1141 (10th Cir. 2020) (same, in a preemption case where the earlier panel issued "a lengthy opinion discussing pure issues of law"); *Sherley v. Sebelius*, 689 F.3d 776, 782–83 (D.C. Cir. 2012) (same, for a statutory ruling in an APA case decided after full briefing and argument); *Cal. Trucking Ass'n v. Bonta*, 723 F. Supp. 3d 920, 925 (S.D. Cal. 2024) (treating the Ninth Circuit's preemption holding from a preliminary-injunction appeal as binding on the merits); *Thalheimer v. City of San Diego*, 2012 WL 177414, at *11 (S.D. Cal. Jan. 20, 2012) (similar; legal ruling "[a]lthough made at the preliminary injunction stage" was "binding on the Court under the law-of-the-case doctrine").

38. The only thing that has changed since then is that the Ninth Circuit has agreed.[2]

### II. This Case Is Not Moot, And The Proper Remedies Are A Declaratory Judgment And Vacatur.

Given that the merits have already been resolved against the government, the only question is the appropriate remedy. The initial Southwest Border GTO that this Court preliminarily enjoined expired by its own terms on September 9, 2025, and subsequent versions of the Southwest Border GTO carved out entities covered by this Court's preliminary injunction. Then, following the Ninth Circuit's opinion, the government issued a revised Southwest Border GTO that does not reach any jurisdictions within the Ninth Circuit. Given the scope of the current Southwest Border GTO, Plaintiffs are not asking this Court to vacate the *current* version of the GTO. Plaintiffs, however, remain entitled to a declaratory judgment holding the *initial* Southwest Border GTO unlawful, as well as a final judgment vacating that *initial* GTO.

To begin, the limited scope of the current version of the Southwest Border GTO does not moot the case, so it does not prevent the Court from entering final judgment. Again, the government *concedes* "the same plaintiffs may well again be subject to a geographic targeting order" and, for that reason, *the government* argues that "this case falls within the exception to mootness for disputes capable of repetition yet evading review." *See* FinCEN Reply Br. 25–26, Doc. 38.1, No. 25-4238 (9th Cir. Sept. 24, 2025); *see also, e.g.*, *Nat. Res. Def. Council, Inc. v. Evans*, 316 F.3d 904, 910 (9th Cir. 2003). Similarly, a concession that the "unlawful conduct" *can* "reasonably be expected to recur" means that the case is not moot under the voluntary-cessation doctrine. *See FBI v. Fikre*, 601 U.S. 234, 240 (2024).

---

[2] Given Plaintiffs' success on the statutory claims, neither the Ninth Circuit nor this Court reached Plaintiffs' Fourth Amendment claim. 9th Cir. Op. 18 n.2. This Court also rejected Plaintiffs' nondelegation claim at the preliminary-injunction stage. ECF 47 at 13–16. Given those rulings, Plaintiffs are moving for summary judgment only on the grounds that were reached by the Ninth Circuit. In doing so, Plaintiffs reserve their constitutional claims and further statutory arguments should proceedings on this motion somehow not resolve the case.

The government has effectively conceded that the only reason that it is not currently subjecting Plaintiff Novedades (and others in the jurisdiction) to the requirements of the Southwest Border GTO is that this Court and the Ninth Circuit have held it cannot. That is the essence of voluntary cessation, and it does not stand in the way of this Court entering a final judgment.

At a minimum, this Court's final judgment should declare that the initial Southwest Border GTO issued on March 11, 2025, was unlawful for all the reasons set out in this Court's initial preliminary-injunction decision, as well as the decision of the Ninth Circuit. In *Biodiversity Legal Foundation v. Badgley*, 309 F.3d 1166, 1174 (9th Cir. 2002), the Ninth Circuit held that the capable-of-repetition-yet-evading-review doctrine saved a challenge to agency action from mootness: declaratory judgment remained available as an appropriate remedy even after the challenged agency action had ended because (as was conceded here) the "Appellants ha[d] a reasonable expectation that they will again litigate the issue." *Id.* Thus "the cessation of conduct does not necessarily render a declaratory judgment moot." *Id.* at 1175 (citing *Skysign Int'l, Inc. v. City & Cnty. of Honolulu*, 276 F.3d 1109, 1114–15 (9th Cir. 2002)).

Even beyond declaratory relief, however, this Court can—and should—enter a final judgment vacating the initial Southwest Border GTO. "Where a court holds an agency action unlawful, vacatur and remand is the default remedy under the APA." *Mont. Wildlife Fed'n v. Haaland*, 127 F.4th 1, 50 (9th Cir. 2025). *See also, e.g.*, *Rest. L. Ctr. v. U.S. Dep't of Lab.*, 120 F.4th 163, 177 (5th Cir. 2024) ("When an agency action is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law, the APA directs the reviewing court to hold unlawful and set aside that agency action. In such circumstances, our court's default rule is that vacatur is the appropriate remedy." (cleaned up)); *Bridgeport Hosp. v. Becerra*, 108 F.4th 882, 890 (D.C. Cir. 2024) ("When an agency's action is unlawful, vacatur is the normal remedy." (quotation marks omitted)); *United Steel Workers Int'l Union v. Mine Safety & Health Admin.*, 925 F.3d 1279, 1287

(D.C. Cir. 2019) ("The 2018 Amendment is therefore *ultra vires* and unenforceable. The ordinary practice is to vacate unlawful agency action … . We therefore take the normal course and vacate the 2018 Amendment." (citation omitted)). Although vacatur of the initial Southwest Border GTO would not bar enforcement of the *current* Southwest Border GTO in those other jurisdictions where the current GTO is in effect, vacatur of the initial GTO would still be a meaningful remedy. That is because (even though the initial Southwest Border GTO no longer requires businesses to file *new* reports) it still imposes five years of record-retention requirements, and FinCEN could still cite it in enforcement actions against businesses that violated the reporting requirement while it was in effect.[3] *Cf. Riverbend Farms, Inc. v. Madigan*, 958 F.2d 1479, 1487 (9th Cir. 1992) (noting that "invalidat[ing] past … restrictions" under the APA would bar future enforcement efforts). Because the Southwest Border GTO was issued in violation of the APA, it should be held "unlawful and set aside," 5 U.S.C. § 706(2), so that it cannot be relied upon by FinCEN as a binding legal obligation in any future agency action. In short, vacatur is the default remedy under the APA, it remains appropriate here, and it is the last step in the case.

## III. The Southwest Border GTO Is Unlawful For All The Reasons Previously Relied Upon By This Court And The Ninth Circuit.

The remainder of this brief recapitulates arguments that have already been ruled on by this Court and by the Ninth Circuit, to ensure that those arguments are fully presented and preserved. As Plaintiffs have previously explained, the Southwest Border GTO is unlawful for (at least) three separate reasons: it is *ultra vires*, it required notice and comment, and it is arbitrary and capricious.

### A. The Southwest Border GTO Is *Ultra Vires*.

Section 5326 authorizes FinCEN to issue an "order" to either a "business" or "group" of businesses. 31 U.S.C. § 5326. That language contemplates "limited, investigatory tools directed to an identifiable business or group of businesses based on particularized facts."

[3] *See, e.g.*, FinCEN, *Press Release* (Apr. 1, 2022), https://perma.cc/3HLJ-FJQR.

ECF 47 at 20. The type of subpoena-like informational demand anticipated in the 1989 rule release, *see* ECF 47 at 30–31 (citing 54 Fed. Reg. 33675 (Aug. 16, 1989)), would fit within that statutory command. By contrast, the Southwest Border GTO is something different. It does not address a particular company or companies based on particularized facts, and, instead, imposes new reporting requirements on businesses that meet a regulatory definition. That is a rule, not an order, so it is *ultra vires*. Six arguments confirm this interpretation of Section 5326.

***First***, Section 5326 directs FinCEN to act via "order," which is a term of art in the APA. *See FDA v. R.J. Reynolds Vapor Co.*, 606 U.S. 226, 234–35 (2025) (holding that a "'term of art' across administrative law" "carries the same meaning outside the APA as in it"). When Section 5326 was enacted in 1988, these definitions had been in the law for decades, and the distinction was well understood: Rules have "the character of legislative enactment carried out on an administrative level," while orders are produced through adjudication involving "the application of a statute or other legal standard to a given fact situation involving particular individuals." *Air Line Pilots Ass'n, Int'l v. Quesada*, 276 F.2d 892, 896 (2d Cir. 1960). When Congress authorized an "order," it authorized a measure directed to identified businesses based on particularized facts.

The government has agreed that Congress "deliberately incorporated the APA's use of the term 'order,'" FinCEN 9th Cir. Br. 11, Doc. 17.1, No. 25-4238 (Aug. 6, 2025), but has also argued the opposite. In the government's view, when interpreting the word "order," the Court should ***not*** "apply[ ] general principles designed to determine the nature of an action susceptible of characterization as either an order or a rule," and should instead hold that ***any*** action that "satisfies the relevant statutory criteria" qualifies as an "order," *id.* at 16. Far from incorporating general APA principles, the government's interpretation would override them.

The government's interpretation of "order" cannot be squared with the Supreme Court's holding, just last year, that Congress's use of an APA "term of art with a 'long

history in federal administrative law'" should be read in line with established judicial interpretations. *See R.J. Reynolds Vapor Co.*, 606 U.S. at 232.

The government's interpretation also cannot be squared with Section 5326's plain text. The word "order" limits the agency's authority: The statute says that if FinCEN finds "reasonable grounds" under the statutory criteria then it "may issue an order requiring" reports. 31 U.S.C. § 5326. What can the agency do if the statutory criteria are met? It can issue an "order." By contrast, the government reads Section 5326 to mean that if FinCEN finds "reasonable grounds" then "the action that results is an 'order.'" FinCEN 9th Cir. Br. 12. That warps the statute—transforming language that defines (and thus limits) the agency's authority into open-ended permission for the agency to take any type of regulatory action it wants.

***Second***, Congress's use of the word "order" was particularly significant because Treasury already had authority under the Bank Secrecy Act, 31 U.S.C. § 5313(a), to require reports via "regulation." *See* ECF 47 at 21–22. The primary difference between the existing provision and Treasury's new authority under Section 5326 was that the provision for GTOs gave the agency authority to act via "order." The new provision gave the agency a new tool in its toolbox—which, before, had been limited to requiring reports via regulation—but directed the agency to act through adjudication directed at specific identified businesses.

The government's contrary interpretation would lead to both redundancy and absurdity. If FinCEN can use Section 5326 to impose a new reporting obligation for all MSBs in 30 ZIP codes, why not 30 states? Or 49? Or 50? The United States of America is, after all, a "geographic area." Under the government's interpretation, so long as it calls its action an "order," it can impose new reporting obligations for any category of regulated businesses in any part of the country, no matter how sweeping the category or how large the area. Under that view, there would no longer be any need for FinCEN's rulemaking power under Section 5313. That is not the scheme Congress adopted.

***Third***, Section 5326(a) specifies that a GTO should apply to a "domestic financial institution or nonfinancial trade or business or group of domestic financial institutions or nonfinancial trades or businesses in a geographic area." That language confirms that GTOs are directed to an identified business or group of businesses, not a regulatory category. *See* ECF 47 at 29 ("The most natural way to read this provision, in context, is that FinCEN may issue an order resulting from a factual determination with respect to either a single business or with respect to a group of multiple businesses," not "a factual determination with respect to a zip code[.]").

The government has cited the dictionary definition of "group" as "a number of individuals assembled together or having some unifying relationship," FinCEN 9th Cir. Br. 15, but that confirms the point: If a group consists of a "number of individuals," then "group" in Section 5326 refers to multiple ***individual*** companies—not a regulatory definition like "money services businesses." *Cf. Trib. Publ'g Co. v. Comm'r*, 731 F.2d 1401, 1403 (9th Cir. 1984) (using "group" in corporate context to refer to a "parent-subsidiary controlled group"). That is particularly true because the word "group" appears alongside the statute's initial reference to a single "domestic financial institution." *See Aguayo v. U.S. Bank*, 653 F.3d 912, 927 (9th Cir. 2011) ("words used in a list should be read together and given related meaning"). The statute is naturally read to mean that an order should be directed either to one business or multiple identified businesses, ***not*** to either a single business or an open-ended category of businesses.[4]

***Fourth***, additional "strong evidence" is found at 31 U.S.C. § 5326(c), which provides for confidentiality of GTOs. *See* ECF 47 at 30. An order directed at a particular business (or group of businesses) can be kept confidential because it can be served directly on the business, which is the procedure the agency contemplated in 1989 when it

[4] If a bride told her in-laws they could invite a "friend or group of friends" to her wedding, she would be surprised if her in-laws published an invitation in the newspaper for "all our friends in the ZIP code."

promulgated regulations (still in effect, but disregarded here) providing that GTOs are to be directed to the chief executive officers of identified companies. *See supra* p. 8. By contrast, a rule that establishes standards for categories of businesses cannot be confidential because it must be publicized so that businesses can read it and determine whether they must comply. That's why rules are typically published in the Federal Register.[5] That FinCEN published the Southwest Border GTO in the Federal Register, and publicized it via press release, "elucidates just how far GTOs have drifted from Congress's original intention." ECF 47 at 33.

The government has argued that the presumption of confidentiality shows the opposite, as confidentiality is inconsistent with notice-and-comment. FinCEN 9th Cir. Br. 13. But that logic does not wash. If FinCEN issues an "order" that is actually a rule, confidentiality is impossible ***regardless*** of whether FinCEN provides for notice-and-comment. By contrast, under this Court's interpretation of "order," the statute hangs together: An order that is actually an order would not require notice-and-comment, and the order could be served confidentially on the targeted companies.

***Fifth***, this conclusion is confirmed by the major questions doctrine, under which courts "expect Congress to speak clearly when authorizing an agency to exercise powers of vast economic and political significance." *Ala. Ass'n of Realtors v. HHS*, 594 U.S. 758, 764 (2021) (cleaned up); *see also Biden v. Nebraska*, 600 U.S. 477, 496–97 (2023). At a single stroke, FinCEN infringed the privacy interests of an undetermined number of businesses and their customers from San Diego to the tip of Texas. Congress certainly did not ***clearly*** give FinCEN the power to adopt such a sweeping surveillance regime. No GTO has ever demanded that businesses throughout a geographic area report on every non-*de minimis* transaction, and the near-unlimited power that FinCEN claims would allow still

[5] By law, agencies must publish "substantive rules of general applicability adopted as authorized by law" in the Federal Register. 5 U.S.C. § 552(a)(1)(D). Orders, on the other hand, are generally not published but are (if not confidential) available at the agency for public inspection. *Id.* § 552(a)(2)(A).

more ambitious GTOs. Plus, beyond the economic implications, the Southwest Border GTO imposes significant invasions of privacy that should trigger the requirement for clear congressional authorization as well.

***Finally***, confirmation comes from the canon of constitutional avoidance. *See, e.g.*, *Kim Ho Ma v. Ashcroft*, 257 F.3d 1095, 1106 (9th Cir. 2001). The Southwest Border GTO raises serious questions under the Fourth Amendment in part because it is much more sweeping than a typical subpoena, and, also unlike a typical subpoena, is not based on individualized facts. Construing Section 5326 as limited to "orders" directed to particular businesses, based on particularized facts, ameliorates these constitutional issues.

**B. The Southwest Border GTO Required Notice-And-Comment.**

Because the Southwest Border GTO is in substance a rule, it also fails for lack of the required notice-and-comment period. *See* 5 U.S.C. § 553. Again, the Southwest Border GTO is a rule because it "imposes new recordkeeping and reporting obligations on a class of businesses with no individualized factual determinations as to whether any business in particular is uniquely vulnerable to money laundering." ECF 47 at 23; *see also TAMSB*, 783 F. Supp. 3d at 983 (FinCEN "announced a 'rule' applicable to broad classes of unspecified individuals[.]").[6]

Numerous cases support this conclusion. For instance, in *Yesler Terrace Community Council v. Cisneros*, 37 F.3d 442, 448 (9th Cir. 1994), agency action was a rule (and not, as claimed, an order) because it "affected the rights of a broad category of individuals not yet identified." Likewise, in *Safari Club International v. Zinke*, a "determination" about importing ivory was a "rule" because it "applied to all potential imports of sport-hunted

[6] Viewed from another angle: An "order" is a product of "adjudication," 5 U.S.C. § 551(7), but there was no adjudication here. Different types of agency adjudications can follow different types of procedures, but a common throughline is that agency adjudication generally must provide parties with notice and an opportunity to be heard. *See, e.g.*, *Am. Airlines, Inc. v. DOT*, 202 F.3d 788, 797 (5th Cir. 2000). For informational demands, like agency subpoenas, that opportunity to be heard generally comes in the form of pre-compliance review. FinCEN provided no such procedure here.

elephant trophies from Zimbabwe" and did not "adjudicate any dispute between specific parties." 878 F.3d 316, 333 (D.C. Cir. 2017); *see also W & T Offshore, Inc. v. Bernhardt*, 946 F.3d 227, 237–39 (5th Cir. 2019) (agency action was a rule, even though the agency labeled it an "order," because it involved the "creation and uniform application of a new methodology").

### C. The Southwest Border GTO Is Arbitrary And Capricious.

Finally, the Southwest Border GTO is a textbook example of an arbitrary and capricious rule. Under Section 5326, FinCEN had to find "***reasonable grounds***" to conclude "that additional recordkeeping and reporting requirements are ***necessary*** to carry out the purposes of" the BSA, "or to prevent evasions thereof." 31 U.S.C. § 5326 (emphases added). The relevant statutory "purposes" include generating records that would be "***highly useful***" for law enforcement. *Id.* § 5311 (emphasis added). The agency's decision—finding these statutory prerequisites met—was not "reasonable and reasonably explained." *FCC v. Prometheus Radio Project*, 592 U.S. 414, 423 (2021). The Southwest Border GTO's purpose is supposedly to fight "Mexican drug cartels." Administrative Record ("AR") 004 (ECF 18-2 at 4). But (among other problems) FinCEN failed to reasonably explain how the speculative benefits could offset the obvious costs. *See E. Bay Sanctuary Covenant v. Garland*, 994 F.3d 962, 984 (9th Cir. 2021) (agency's failure to consider impact of regulation was arbitrary and capricious).

To start, given the March XX date on the memo justifying the Southwest Border GTO, AR004–20, the memo cannot even be considered. For that reason, FinCEN provided literally no reasoned explanation of the costs imposed by the GTO, and it fails for that reason alone. *See* ECF 47 at 36 n.4; *see also Sierra Club v. Bosworth*, 510 F.3d 1016, 1022–23, 1026 (9th Cir. 2007) (agencies cannot rely on "post-hoc" rationales).

But even if one were to consider the memo's discussion of costs, it reads, in full, "While the GTO would place a higher burden on Covered Businesses due to the increased volume of CTRs that would result, it is merely a reporting obligation and does not alter

their obligations with respect to [anti-money-laundering] programs." AR017. Merely? Not according to FinCEN's own information. FinCEN's own most recent estimate is that, for small businesses without sophisticated software, each CTR takes 24 minutes to complete. 85 Fed. Reg. 29029 (May 14, 2020). FinCEN also knows that a $200 threshold is well below the $390 average remittance transaction at MSBs. *See* AR163; ECF 47 at 41. So FinCEN should have known that it was imposing around 24 minutes of new paperwork for most transactions at these businesses—or, for Novedades, more hours of compliance work daily than there are in a day. ECF 22-2 (Gomez PI Decl.) ¶ 50.[7]

As the Fifth Circuit explained in *Mexican Gulf Fishing Co. v. U.S. Department of Commerce*, agency action is arbitrary and capricious if the agency "failed to consider an important aspect of the problem," and "[t]his includes, of course, considering the costs and benefits." 60 F.4th 956, 973 (5th Cir. 2023) (citing *Michigan v. EPA*, 576 U.S. 743, 751 (2015)). Consideration of costs and benefits is, the Fifth Circuit explained, necessary to "satisfy minimum standards of rationality." *Id.* (quoting *Pub. Citizen v. EPA*, 343 F.3d 449, 455 (5th Cir. 2003)). On that basis, the Fifth Circuit struck down a surveillance requirement (requiring reporting of GPS data by fishing boats) because the "insignificant benefits [did] not bear a rational relationship to the serious financial and privacy costs imposed." *Id.* at 973. So too here. *See also California v. U.S. Bureau of Land Mgmt.*, 277 F. Supp. 3d 1106, 1122 (N.D. Cal. 2017) ("[T]o look at only one side of the scales, whether solely the costs or solely the benefits, flunks th[e] basic requirement" of considering all important aspects of the problem.).

## CONCLUSION

The Southwest Border GTO is *ultra vires*, lacking required notice and comment, and arbitrary and capricious. The Court should thus grant partial summary judgment to

[7] The record developed here confirms those predictable burdens are real—and devastating. *See* ECF 47 at 46–47; ECF 22-2 (Gomez PI Decl.) ¶¶ 41–56. If the agency had allowed for notice-and-comment, businesses could have explained as much.

Plaintiffs, declare that the initial Southwest Border GTO was unlawful, vacate it, and close the case.

Dated: October 21, 2026

Respectfully submitted,

**INSTITUTE FOR JUSTICE**

/s/ Robert E. Johnson
Robert E. Johnson (DC Bar No. 1013390)*
16781 Chagrin Blvd., Suite 256
Shaker Heights, OH 44120
(703) 682-9320
rjohnson@ij.org

Elizabeth L. Sanz (CA Bar No. 340538)
Andrew Ward (NY Bar No. 5364393)*
901 N. Glebe Road, Suite 900
Arlington, VA 22203
(703) 682-9320
bsanz@ij.org
award@ij.org

Jeffrey Rowes (TX Bar No. 24104956)*
816 Congress Ave., Suite 970
Austin, TX 78701
(512) 480-5936
jrowes@ij.org

Katrin Marquez (FL Bar No. 1024765)*
2 South Biscayne Blvd., Suite 3180
Miami, FL 33131
(305) 721-1600
kmarquez@ij.org

**THE VORA LAW FIRM, P.C.**
Nilay U. Vora (SBN 268339)
nvora@voralaw.com
Jeffrey Atteberry (SBN 266728)
jatteberry@voralaw.com
201 Santa Monica Blvd., Suite 300
Santa Monica, CA 90401
(424) 258-5190

* Admitted *pro hac vice*

*Attorneys for Plaintiffs Novedades y Servicios, Inc. and Esperanza Gomez Escobar*